## J. R. FINN, DOING BUSINESS AS BORDER FINANCE COMPANY, V. R. L. ALEXANDER.

No. 7938. Decided July 15, 1942.
(163 S. W. 2d Series, 714.)

*Cunningham, Ward & Cunningham,* of El Paso, for appellant.

*A. L. Carlton,* of El Paso, for appellee.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

R. L. Alexander filed this suit against Border Finance Company (J. R. Finn, doing business as such company) for recovery of double the amount of interest he had paid the company during the two years next preceeding the filing of the suit, alleging payment of usury. The company defended on the ground that

Alexander had released whatever cause of action he may have had. The trial court found Alexander had paid $103.00 usurious interest during the two years referred to, denied the company's defense, and rendered judgment in Alexander's favor for $206. The Court of Civil Appeals upon original hearing affirmed the judgment but upon motion of the finance company on rehearing certified the following question:

"Did we err in holding that the usurious loans did not constitute a good consideration for the release?"

A copy of the court's opinion on original hearing, the transcript, and the statement of facts, accompanying the certificate to furnish the essential facts.

Findings of facts and conclusions of law were filed by the trial court which are summarized below.

On April 20, 1938, Alexander gave the finance company a note for $78.60 payable in six monthly installments of $13.10 each, payable on the 5th and 20th respectively of each succeeding month. The company delivered to Alexander $30.00 in money and credited him with $30.00 on a prior note which he had given the company more than two years before filing suit. On May 20, June 5, June 20 and July 5, 1938, Alexander paid the first four installments aggregating $52.40. Following payment of the fourth installment on July 5th the finance company on July 9th made him another loan for $78.60, taking his note for that amount. For this note he received credit for the last two installments on the first note ($26.20) and $44.80 in money, aggregating $60.00. The six installments of this note were made payable in the same manner as those of the first note and were promptly paid, the payment of the last installment being made November 5, 1938. Shortly thereafter (November 22nd) the finance company made Alexander another loan, and took his note for $60.00 and Alexander received $50.00. December 5th he discharged this loan by paying the company $60.00 in cash. The next month (January 4, 1939) the finance company made Alexander another loan for which he executed his note for $78.60 payable in six monthly installments on the succeeding 5th and 20th of each month. Upon execution of this note the company paid over to Alexander $60.00. He paid five of these installments, making payment of the fifth on April 5, 1939. April 21, following, the company made him another

loan for which he executed his note for $78.60 payable in installments in the same manner as theretofore. For this note he received $46.90 and a credit for the last installment on the preceeding loan. The first three installments were paid May 20, June 5 and July 20, 1939. A month later the three remaining installments were paid. On September 23rd, following, the finance company made another loan for which Alexander gave his note for $78.60 payable in installments, as were the other notes for that amount, and received $60.00 in cash. This note was paid in full, the last installment, December 20, 1939.

The findings recite, summing up the transactions, that commencing April 20, 1938, and ending December 22, 1939, the finance company loaned Alexander in accordance with the plan indicated above, $310.70, and that Alexander paid the company between those dates $413.70; and further recite the following:

"The time elapsed between those dates was one year, eight months and two days. The maximum amount of defendant's money that was ever in plaintiff's possession at any time during that period was $60.00. The sum of $103.00 paid to defendant by plaintiff during the period referred to, as interest, was usurious."

It was upon the facts stated that judgment was awarded in favor of Alexander for $206.00.

The trial court further found that on April 21, 1939, at the time Alexander gave the finance company his note for $78.60 and received therefor $46.90 in cash and credit for $13.10, he executed and delivered to the finance company what purported to be a release, which reads:

"Whereas, I have heretofore at different times borrowed money from * * * BORDER FINANCE COMPANY and each of said loans having heretofore been paid and fully settled and I, being desirous of again procuring more money from Border Finance Co. do now state that all claims and all suits or demands of any kind that I might have had or do have against * * * the Border Finance Co. * * * or any other person or persons, firms or corporations, concerning said loan or loans, have been released, and I do now here release and discharge them, and each of them * * * therefrom, it being my intention, if any cause of action exists in me, by reason of any trans-

action heretofore had with them \* \* \* to release them \* \* \* therefrom, and to never in the future ask or demand, or sue upon such claims or demands \* \* \* growing out of any trans-action \* \* \* heretofore made with them \* \* \*, and all other persons, firms and corporations or any agent or employees representing them under any name that they do or may do or have done business, *and I recognize that this release is a part of a consideration to advance to me further money which I have received."* (Italics ours.)

The trial judge further pointed out in his findings that on September 23, 1939, when the loan of that date was made, an identical purported release (other than as to date) was given the company by Alexander.

The statement of facts discloses that loan transactions were had at intervals between the finance company and Alexander as far back as March, 1937, but the trial court pointed out that in view of the statute of limitations only the amounts paid subsequent to a time two years before the filing of suit need be considered. The trial court further found that at the time of the execution of the "release" documents Alexander had a right of action against the finance company in double the amount of usurious interest theretofore paid by him to the company; also that the release in each instance was "one and the same transaction" with the delivery of the prior note and the receipt by Alexander of the money from the finance company, and that the release constituted compensation to the company, additional to Alexander's promises to return to the company the $60.00 and the $18.60.

The trial court concluded that at the time of the execution of the purported releases Alexander, by virtue of the execution thereof along with the contemporaneous notes, acquired the use of $60.00 of the company's money and as compensation therefor not only promised to return to it $78.60, but also released his cause of action for prior usury payments; and that the promise then made to return $18.60 in addition to the $60.00 was usurious and void, as was also "the additional compensation purported to be given with the execution and delivery of the releases, there being no distinction in law in favor of a compensation that is paid immediately upon the making of the loan." The concluding statement of the findings and conclusions of the trial court is, substantially, that when transactions are in fact usurious, "the particular device or devices

used to cover up the usurious transactions are no protection to the exactor of usury."

The El Paso Court of Civil Appeals in affirming upon original hearing the judgment below, speaking through Chief Justice Price, states that the trial court's finding that the finance company had collected from Alexander during the relevant two years $103.00 usurious interest, is amply sustained by the evidence and further states that the finding is not in fact assailed by the finance company. The opinion upholds the view of the trial judge as expressed above in his findings and conclusions. The company's defense to the effect that the documents purporting to release the causes of action sued upon by Alexander were effective as releases in that they were supported by ample consideration and were made after the accrual of the prior causes of action which they respectfully purported to release, was repudiated both by the trial court and the opinion affirming its judgment.

The view expressed in the findings and conclusions of the trial court, as stated above, is substantially that expressed by the Court of Civil Appeals in affirming, upon original hearing, the trial court's judgment. A similar view had theretofore been expressed by the court (again speaking through Chief Justice Price) in Smith v. Brewer, 149 S. W. (2d) 262. The reason for certifying the question under consideration appears to have been that such view is in conflict with that expressed in Employees Loan Co. v. Templeton, 109 S. W. (2d) 774, and Cotton v. Beatty, 162 S. W. 1007.

 It is well settled that written contracts which provide for interest at a greater rate than ten per cent. are void to the extent of the interest. Art. 5071, R. S. 1925. It is also settled that an accrued cause of action for the collection of usurious interest paid may be compromised and released by the payer. Stout v. Ennis Nat'l Bank, 69 Texas 392, 8 S. W. 808. The compromise, however, must be made in good faith and the instruments evidencing same must not be executed to cloak the real transaction.

It is not necessary, in the light of the trial court's findings to discuss the effect of a release made by the payer of usury in good faith and not for the purpose of cloaking the usury. In Cotton v. Thompson, 159 S. W. 455, the court says:

"* * * such compromise and adjustment (such as was involved in Stout v. Bank, 69 Tex. 392, 8 S. W. 808) to be valid should be entered into in good faith, and the right to recover the usury waived by the paper for a sufficient consideration. And even in some jurisdictions it is held that settlement of usurious dealings are excepted from the general rule that the parties to a voluntary settlement fairly made cannot reopen it, since otherwise usurers might make a practice of giving their illegal claims the form of an account stated, and thus evade the usury laws."

It was held in the case quoted from that after the making of several loans which were illegal because of the usurious nature of the transaction, a release executed by the payer did not stand in the way of his recovery of the penalty provided by law. See in this connection El Paso Building & Loan Ass'n. v. Lane, 81 Texas 369, 17 S. W. 77 and International Building & Loan Association v. Biering, 86 Texas 476, 25 S. W. 622, 26 S. W. 39, for the principles therein applied.

In Gibson v. Hicks (wr. ref.), 47 S. W. (2d) 691, the court says:

"In the case of a usurious contract, the debtor always agrees to make the usual payment, and we fail to see how it can be said that a subsequent agreement of the debtor to pay usurious interest, even though it be in the nature of a compromise or settlement, would preclude him from asserting a claim for the recovery of the usurious interest and the penalty after the usury has been collected by the creditor. Such an agreement would, in the first place, be founded on no consideration, the debtor having received nothing for his so agreeing, and the creditor would be merely surrendering a part of a sum which he had no lawful right to collect."

We approve the foregoing statement of the law as applicable in the present case, especially in the light of the findings of the trial court.

The trial court's findings of fact show there had been a series of transactions between the finance company and Alexander, all of which were tainted with usury, and that the releases involved were integral parts of the prior loan transactions to which they respectively related. The facts warranted the trial court in concluding the entire transactions of which the

releases were integral parts were usurious and that the device used to cloak the usurious transactions was no protection to the finance company. The facts support the conclusion that the purported release obtained under the circumstances pointed out was not effective as such. See annotation of this subject under Majestic Loan Company v. Edmondson, 172 Okla., 222, 45 Pac. (2d) 504, 99 A. L. R. 600.

The findings and conclusions of the trial court distinguish it in the present case from Stout v. Bank relied upon by the company, and render it unnecessary to consider the effect, standing alone, of the release, or of any other constituent element of the final transaction of the series. The Court of Civil Appeals correctly decided the case upon original hearing. Any holdings made in Cotton v. Beatty and Employees Loan Company v. Templeton not in harmony with this opinion, are expressly disapproved.

We answer the question certified in the negative.

Opinion adopted by the Supreme Court July 15, 1942.